UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: STEVEN G. SHARKEY and
SANDRA E. SHARKEY,

                Debtors.

_____/

STEVEN G. SHARKEY and SANDRA
E. SHARKEY,

                Appellants,

v.

STEVENSON AND BULLOCK, PLC,

                Appellee.

_____/

Case No. 17-11237

Paul D. Borman
United States District Judge

Thomas J. Tucker
United States Bankruptcy Judge

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S APRIL 6, 2017 ORDER REGARDING MOTION TO ALLOW ADMINISTRATIVE EXPENSE FILED BY STEVENSON AND BULLOCK, PLC (BANKRUPTCY DKT. NO. 194)

This is an appeal of the Bankruptcy Court's decision to reimburse as administrative expenses certain costs incurred by law firm Stevenson & Bullock, PLC ("**Creditor/Appellee**") when it objected to exemptions claimed by Steven and Sandra Sharkey ("**Debtor/Appellants**") in their Chapter 13 bankruptcy proceedings. In particular, Debtor/Appellants challenge the Bankruptcy Court's reliance on the Sixth Circuit decision *Mediofactoring v. McDermott (In re Connolly N. Am., LLC )*, 802 F.3d 810 (6th Cir. 2015), which Debtor/Appellants claim the Bankruptcy Court

impermissibly extended by applying it to this case.

The legal issue that underlies the appeal is this: in *Connolly*, the Sixth Circuit held that administrative expenses under 11 U.S.C. § 503(b)(3)(D), nominally available only in Chapter 9 and Chapter 11 cases, could be awarded to a creditor in a Chapter 7 proceeding owing to special circumstances present in that case. Did the Bankruptcy Court err in relying on *Connolly* to do the same in this Chapter 13 case? For the reasons articulated below, this Court holds that it did not, and therefore affirms the decision of the Bankruptcy Court.

## I.    BACKGROUND

On March 25, 2016, Debtor/Appellants jointly filed a voluntary petition for Chapter 7 bankruptcy. (*In re Sharkey*, Bankr. Case No. 16-44445, ECF No. 1, Voluntary Petition (Chapter 7).) Among the assets listed on the petition are two annuities, the combined stated value of which is $96,675: "The Hartford Annuity," valued at $78,897, and the "Nationwide Annuity," valued at $17,778. (*Id.* at 13.) The two annuities are also included on a list of property that Debtor/Appellants claim as exempt from the bankruptcy estate, and the petition's stated legal basis for exempting the annuities is 11 U.S.C. § 522(d)(10)(E).[1] (*Id.* at 17.)

---

[1] That provision of the U.S. Bankruptcy Code permits a debtor to exempt his or her
  right to receive . . . a payment under a stock bonus, pension, profitsharing,
  annuity, or similar plan or contract on account of illness, disability, death, age, or

The Designated Bankruptcy Record indicates that after Debtor/Appellants filed their bankruptcy petition, Michael A. Stevenson was appointed the Chapter 7 Trustee in the proceeding, and his law firm, Stevenson & Bullock, PLC (Creditor/Appellee in this appeal), was retained to represent him in his capacity as Trustee. (*See* ECF No. 4, Designated Bankruptcy Record at 51, Pg ID 64.)

On June 22, 2016, the case was converted from a Chapter 7 bankruptcy to a Chapter 13 bankruptcy, and a new Trustee was appointed. Two months later, Creditor/Appellee successfully applied for an administrative expense allowance in the amount of $6,480.34 for its work in representing the Trustee before the case was converted to Chapter 13. (*See* Designated Bankruptcy Record at 51, Pg ID 64.) That work included filing an objection to Debtor/Appellants' claim of exemptions (including the Hartford Annuity and the Nationwide Annuity), but the objection was mooted when the case was converted to Chapter 13. (*See id.* at 51-52, Pg ID 63-64.) Thus, Creditor/Appellee's role shifted at that point in the proceeding.

---

length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless--
    (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
    (ii) such payment is on account of age or length of service; and
    (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E).

Creditor/Appellee had been Trustee Stevenson's counsel when the case was a Chapter 7 bankruptcy; after it was converted to Chapter 13, Creditor/Appellee was simply a creditor that was owed for the work it did before the conversion.

Litigation over the exemption status of the Hartford Annuity and the Nationwide Annuity continued after the Chapter 13 conversion. That litigation included two more sets of objections filed by Creditor/Appellee regarding Debtor/Appellants' attempt to exempt the annuities. (*See* Designated Bankruptcy Record at 52-53, Pg ID 64-65.) Notably, the Chapter 13 Trustee (*i.e.*, Creditor/Appellee's successor) filed a concurrence with the Bankruptcy Court regarding Creditor/Appellee's final and successful objection to the exemption.[2] (*See id.* at 50, Pg ID 62.) Ultimately, on February 16, 2017, the Bankruptcy Court sustained Creditor/Appellee's objection to Debtor/Appellants' claimed exemption of the annuities, and disallowed those claims. (*See id.* at 59-78, Pg ID 71-90.)

Four days later, Creditor/Appellee filed a Motion to Allow Administrative

---

[2] The record suggests that the Chapter 13 Trustee filed this concurrence at Creditor/Appellee's suggestion. In a November 30, 2016 email, Creditor/Appellee's counsel notified the Chapter 13 Trustee that she had filed the objections to the exemptions, and pointed out that Debtor/Appellants had taken the position that Creditor/Appellee lacked standing to raise those objections. In the email, Creditor/Appellee's counsel suggested to the Chapter 13 Trustee that given the potential standing issue, "it may be in the estate's best interest if the Trustee were to file a concurrence to my objections to exemptions so that, one way or another, these improper exemptions are not allowed and the Debtors are required to pay all creditors in full, as they should be." The Chapter 13 Trustee responded: "Sounds good – we can do that." (Designated Bankruptcy Record at 98, Pg ID 110.)

Expense Pursuant to 11 U.S.C. § 503(b). (Designated Bankruptcy Record at 82-98, Pg ID 94-110.) In that motion, Creditor/Appellee pointed out that as a result of its successful objection to Debtor/Appellants' claimed exemptions in the two annuities, Debtor/Appellants would now have to "pay all administrative claims and unsecured creditors 100% of their claims with interest, which is more than the Debtors had proposed to pay in their First Amended Chapter 13 Plan." (*Id.* at 85, Pg ID 97.) Because this "directly and substantially benefitted the bankruptcy estate by helping the estate preserve its interest in the Annuities," Creditor/Appellee argued, Creditor/Appellee was entitled to an administrative expense claim for the costs it incurred in bringing about that result. Creditor/Appellee therefore requested an order allowing it a second administrative expense claim, this time in the amount of $32,694.76. (*Id.* at 85-86, Pg ID 97-98.)

After the parties briefed Creditor/Appellee's Motion to Allow Administrative Expenses, the Bankruptcy Court conducted a hearing on the motion on April 6, 2017. After hearing argument from the parties, the Bankruptcy Court stated that Creditor/Appellee's motion would be granted to the extent that it sought reasonable attorney fees and expenses incurred by Creditor/Appellee in successfully objecting to the claimed exemptions in the annuities. The Bankruptcy Court further stated that it would reserve the decision on the precise amount for a later date. (Designated Bankruptcy Record at 153-54, Pg ID 165-66.) The Bankruptcy Court stated on the

record that it based its decision on *Mediofactoring v. McDermott (In re Connolly N. Am., LLC )*, 802 F.3d 810 (6th Cir. 2015), in which the Sixth Circuit upheld the award of an administrative expense in a Chapter 7 case under 11 U.S.C. 503(b)(3)(D), the same Bankruptcy Code provision at issue in this case. (*See* Designated Bankruptcy Record at 359-60, Pg ID 371-72.) The Bankruptcy Court also rejected Debtor/Appellants' argument based on *Lamie v. United States Trustee*, 540 U.S. 526 (2004), in which the U.S. Supreme Court analyzed a separate Bankruptcy Code provision—11 U.S.C. § 330(a), which permits reimbursement of professional fees in certain circumstances—and concluded that reimbursements under that provision may be awarded only if the attorney or accountant is employed by the bankruptcy trustee with the approval of bankruptcy court. (*See id.* at 360-61, Pg ID 372-73.) Finding that *Connolly* was controlling and that *Lamie* did not require a contrary result, the Bankruptcy Court stated that Creditor/Appellee's motion would be granted, and that Creditor/Appellee would be awarded the administrative expense that it had requested. (*See id.* at 358-62, Pg ID 370-74.)

On the same day (April 6, 2017), the Bankruptcy Court entered an Order Regarding Motion to Allow Administrative Expense Filed by Stevenson and Bullock, PLC. (*In re Sharkey*, Bankr. Case No. 16-44445, ECF No. 194 ("**April 6, 2017 Order**"); Designated Bankruptcy Record at 153-54, Pg ID 165-66.) In the April 6, 2017 Order, the Bankruptcy Court granted Creditor/Appellee's motion, and

stated that Creditor/Appellee would be "allowed an administrative expense in the amount of the reasonable attorney fees and expenses incurred by [Creditor/Appellee], after the conversion of this case to Chapter 13, in successfully objecting to [Debtor/Appellants'] claimed exemptions in the scheduled assets described as 'The Hartford Annuity' and the 'Nationwide Annuity.'" (*Id.*) The Bankruptcy Court further stated in the April 6, 2017 Order that it would hold a hearing regarding the precise dollar amount of the administrative expense on April 20, 2017, and that it would rule on that issue on that date. (*See id.*)

Debtor/Appellants challenged the Bankruptcy Court's April 6, 2017 Order via the instant appeal, which was filed on April 20, 2017. (ECF No. 1, Notice of Appeal from Bankruptcy Court.) The following day, the Bankruptcy Court entered an opinion and order setting the amount of the administrative expense claim at $23,289.76. (Designated Bankruptcy Record at 6-13, Pg ID 18-25.) The dollar amount of the administrative expense awarded by the Bankruptcy Court is not at issue in this appeal.

The parties fully briefed this appeal. (ECF No. 5, Debtor/Appellants' Br.; ECF No. 7, Creditor/Appellee's Br.; ECF No. 9, Debtor/Appellants' Reply.) This Court held a hearing on August 16, 2017, and now issues the following ruling.

## II.     LEGAL STANDARDS

District courts review factual findings of bankruptcy courts for clear error, and

their legal conclusions *de novo*. *See In re Batie*, 995 F.2d 85, 88–89 (6th Cir. 1993).

As there are no material factual disputes in this case, this Court's review is *de novo*.

## III. ANALYSIS

The U.S. Bankruptcy Code empowers Bankruptcy Courts to award "administrative expenses" to certain persons in certain circumstances, to be paid from the bankruptcy estate. *See* 11 U.S.C. § 503. The Bankruptcy Code affords administrative expense claims higher priority than almost any other type of claim. *See* 11 U.S.C. § 507(a)(2).

11 U.S.C. § 503(b)(3)(D) ("**§ 503(b)(3)(D)**") is the Bankruptcy Code provision at the heart of this appeal. In context, § 503(b)(3)(D) relevantly provides:

> After notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title . . . .

11 U.S.C. § 503(b).

The "paragraph (4)" referenced in the provision quoted above, in turn, provides that administrative expenses are also allowed for

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph . . . (D) . . . of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and

reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

11 U.S.C. § 503(b)(4) ("**§ 503(b)(4)**").

Thus, § 503(b)(3)(D) provides for the award of reimbursement claims for creditors who incur "actual, necessary" expenses by making "substantial contribution[s]" in cases under Chapter 9 or Chapter 11. § 503(b)(4) governs reasonable compensation for attorneys or accountants employed by entities with allowable expenses under § 503(b)(3)(D). Substantial contribution claims under § 503(b)(3)(D) and professional compensation claims under § 503(b)(4) are both given the same high-priority status by the Bankruptcy Code. *See* 11 U.S.C. § 507(a)(2).

## A.      Jurisdictional and Waiver Issues

As a threshold matter, Creditor/Appellee argues that this Court lacks jurisdiction to hear this appeal, and that Debtor/Appellants have waived their right to appeal what Creditor/Appellee characterizes as alternative grounds for the Bankruptcy Court's decision. Neither argument has merit.

### 1.      Jurisdiction

In a prefatory section of its brief on appeal, Creditor/Appellee argues that this Court lacks jurisdiction over this matter pursuant to 28 U.S.C. § 158 because the Bankruptcy Court's April 6, 2017 order granting Creditor/Appellee its requested administrative expense is not a final or interlocutory order appealable to this Court,

and because Debtor/Appellants did not obtain leave of the Bankruptcy Court to appeal. In response, Debtor/Appellants cite Sixth Circuit authority establishing that a bankruptcy court's order awarding professional compensation under 11 U.S.C. §§ 330 and 331 can be appealable if it conclusively determines the amount to be paid. (*See* Debtor/Appellants' Reply at 5, Pg ID 418 (citing *In re Boddy*, 950 F.2d 334, 336 (6th Cir. 1991)).)

Neither party cites relevant legal authority on this issue: Debtor/Appellants' cited case concerns reimbursement under a different Bankruptcy Code provision from that at issue in this appeal, and Creditor/Appellee fails to develop its argument entirely. Case law from the Sixth Circuit and from other circuits supports the conclusion that bankruptcy court awards of administrative expenses under 11 U.S.C. § 503(b) are appealable orders. *See In re Henricks Commerce Park, LLC*, 347 B.R. 115 (B.A.P. 6th Cir. 2006) (holding that a "request for allowance of administrative expense under § 503(b)(3)(D) and (4) is a final, appealable order") (citing *In re Economy Lodging Sys., Inc.*, 234 B.R. 691 (B.A.P. 6th Cir. 1999)), *aff'd*, 313 F. App'x 740 (6th Cir. 2007); *see also In re Morad*, 328 B.R. 264, 268 (B.A.P. 1st Cir. 2005) ("The bankruptcy court's denial of [a judgment creditor's] § 503(b) application is a final order.") (citing *Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1339 (11th Cir. 2000) and *Marcus Montgomery Wolfson & Burten, P.C. v. AM Int'l, Inc. (In re AM Int'l, Inc.)*, 203 B.R. 898, 900 (D. Del. 1996)).

Accordingly, the Court will not dismiss the appeal for lack of jurisdiction.

## 2.     Waiver

In the final paragraph of its brief, Creditor/Appellee contends that the Bankruptcy Court awarded the administrative expense to Creditor/Appellee pursuant to both § 503(b)(3)(D) and § 503(b)(4), and argues that because Debtor/Appellants have appealed the ruling based on § 503(b)(3)(D), they have waived any argument regarding § 503(b)(4). This renders the entire appeal moot, Creditor/Appellee maintains, because Debtor/Appellants' failure to appeal the Bankruptcy Court's decision based on § 503(b)(4) leaves that alternative ground for the decision unchallenged.

Here again, Creditor/Appellee cites neither binding nor persuasive authority to support its argument. There is also nothing in the record to suggest that the Bankruptcy Court regarded § 503(b)(4) as an independent basis for its decision. The Bankruptcy Court referred to § 503(b)(4) only twice at the April 6, 2017 hearing, and in both instances the Bankruptcy Court described § 503(b)(4) as operating in tandem with § 503(b)(3)(D): first by characterizing this case as "actually a combination of 503(b)(3) and 503(b)(4)," and then in noting that a Supreme Court case cited by Debtor/Appellants (*Lamie v. U.S. Trustee*, 540 U.S. 526 (2004), discussed below) is inapposite because it does not concern "administrative expense[s] under Section 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code . . . or

just generally under Section 503(b)." (Designated Bankruptcy Record at 358-60, Pg ID 370-72.)

The Bankruptcy Court's characterization of § 503(b)(3) and § 503(b)(4) is consistent with the text of the two statutory provisions. The former creates a category of claims for "actual, necessary expenses, other than compensation and reimbursement specified in [§ 503(b)(4)] . . . ." 11 U.S.C. § 503(b)(3). The latter creates a separate category of claims based on "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under [§ 503(b)(3)(A)-(E)]," and then sets forth standards for evaluating the reasonableness of the requested compensation. 11 U.S.C. § 503(b)(4).

In short, § 503(b)(4) incorporates § 503(b)(3) and imposes an additional reasonableness requirement. In this case, Debtor/Appellants do not challenge the reasonableness of the amount of the administrative expense, but rather the fact that the Bankruptcy Court awarded it in the first place. It follows that even if the Bankruptcy Court did base its decision on § 503(b)(4) as an independent ground, Debtor/Appellants would make the same arguments as they have made here regarding § 503(b)(3).

For these reasons, the Court rejects Creditor/Appellee's argument that this appeal should be dismissed because Debtor/Appellants' failure to appeal on the basis on § 503(b)(4) renders the appeal moot.

**B.** **Substantial contribution administrative expenses in Chapter 13 cases**

As noted above, 11 U.S.C. § 503(b)(3)(D) empowers a bankruptcy court to award "actual, necessary expenses," excluding those that fall within § 503(b)(4), that are "incurred by . . . a creditor . . . in making a substantial contribution in a case under chapter 9 or 11" of the Bankruptcy Code. 11 U.S.C. § 503(b)(3)(D).

The phrase "in a case under chapter 9 or 11" in that subprovision underpins Debtor/Appellants' principal argument here. It was also a significant part of the Sixth Circuit's reasoning in *Mediofactoring v. McDermott (In re Connolly N. Am., LLC )*, 802 F.3d 810 (6th Cir. 2015), the decision that the Bankruptcy Court relied upon in awarding the challenged administrative expenses to Creditor/Appellee in this case. The Bankruptcy Court's reliance on *Connolly* is what Debtor/Appellants challenge here, and this appeal therefore warrants a careful analysis of the facts and reasoning behind that decision.

**1.** ***Connolly***

Six years after the Chapter 7 debtor in *Connolly* entered bankruptcy, the bankruptcy court dismissed with prejudice an adversary proceeding that had been initiated by the bankruptcy trustee, Mark H. Shapiro. The bankruptcy court did this after finding that Shapiro and his attorney had breached discovery obligations in the course of that adversary proceeding, and had thereby committed gross negligence. Three unsecured creditors in the case then filed a motion to remove Shapiro as

trustee, and prevailed. The new bankruptcy trustee commenced an adversary proceeding against his predecessor Shapiro, which ultimately led to a court-approved settlement for a substantial amount of money. *Connolly*, 802 F.3d at 813.

Together, two of those three unsecured creditors (collectively referred to as "**Coface**") then applied under § 503(b) for reimbursement of the attorney fees that Coface had incurred in bringing about the removal of the grossly negligent trustee. Coface argued that it had made a substantial contribution to the bankruptcy estate by participating in Shapiro's removal, since the monetary settlement from the adversary proceeding against Shapiro would not have been possible had Coface not moved for (and then litigated the issue of) Shapiro's removal in the first place. *Id.* at 813-14. The United States Trustee opposed the application, and the bankruptcy court subsequently denied it, concluding that the phrase "in a case under chapter 9 or 11" in § 503(b)(3)(D) precluded the administrative expense, since the case at bar was a Chapter 13 case. The district court agreed and affirmed. *Id.* at 814.

The Sixth Circuit reversed the lower court decisions, and held that notwithstanding the "chapter 9 or 11" language in § 503(b)(3)(D), Coface was still entitled to an administrative expense under that provision. This was based on the court's conclusion that a bankruptcy court could award an administrative expense in a Chapter 7 case where, "as here, reimbursement of administrative expenses properly follows from the totality of the pertinent facts, interpretation of the statutory

language, and relevant equitable considerations." *Id.* at 815. The court arrived at this conclusion for several distinct reasons.

First, the court held that the text of the Bankruptcy Code supported that outcome, particularly the use of the word "including" in the opening phrase of § 503(b), which provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, *including* . . . [,]" whereupon the statute lists different categories of administrative expenses. The court explained that the word "including" implies that the list is non-exhaustive, and then rejected an argument that the "chapter 9 or 11" limitation in § 503(b)(3)(D) negates that implication, reasoning that while Congress could have expressly included Chapter 7 in the subprovision, it could just as easily have expressly *excluded* it. On balance, the court held, the statutory text more strongly implies that the subprovisions after "including" in § 503(b)(3)(D) are examples rather than an exhaustive list, and the court cited decisions by courts within various circuits supporting that reading. *See Connolly*, 802 F.3d at 816-17 (collecting cases). The *Connolly* court also noted that the Sixth Circuit had reached the same conclusion regarding other forms of administrative expenses. *See id.* at 816 ("[T]he failure of Congress to expressly list interest as an administrative expense [in a subsection of § 503(b)] does not mean that it cannot be an administrative expense.") (alterations in original) (quoting *United States v. Flo–Lizer, Inc.* (*In re Flo–Lizer, Inc.*), 916 F.2d

363, 365 (6th Cir. 1990)). *See also Connolly*, 802 F.3d at 816 (citing *In re George Worthington Co.,* 921 F.2d 626, 634 (6th Cir. 1990)).

Second, the court opined that the reason that § 503(b)(3)(D) mentions Chapter 9 and Chapter 11 but not Chapter 7 cases may well be that Chapter 9 and Chapter 11 bankruptcies require creditors to step in and a make a "substantial contribution" for the benefit of the estate more frequently than Chapter 7 bankruptcies do, because "in all but the most atypical Chapter 7 case . . . , the U.S. Trustee fulfills this role." *Connolly*, 802 F.3d at 817 (further noting that according to a 1978 congressional report, "the primary role of the U.S. trustees is to serve as the 'bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena'") (quoting H.R.Rep. No. 95–595 at 88 (1978), 1978 U.S.C.C.A.N. 5963, 6049). The court then examined the role of the U.S. Trustee in Chapter 7 bankruptcies generally:

> The U.S. trustee is tasked with, among other things, "monitoring the progress of cases under [the Bankruptcy Code] and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress." 28 U.S.C. § 586(a)(3)(G). If the U.S. trustee determines that the acting trustee failed "to safeguard or to account for estate funds and assets," or believes that the acting trustee has delivered "[s]ubstandard performance of general duties and case management," the U.S. trustee may remove the acting trustee. 28 C.F.R. § 58.6(a)(1), (4). And if the U.S. trustee does not see cause to remove the acting trustee, a creditor typically must only file a motion with the bankruptcy court to have the acting trustee's conduct reviewed. See 11 U.S.C. § 324 (providing the bankruptcy court with authority to remove an acting trustee). Such a motion alerts the U.S. trustee of the issue and, in theory, prompts an investigation. Thus, in a properly administered case under

Chapter 7, a creditor will not be in a position to "substantially contribute" to the estate by pursuing the acting trustee's removal and prosecuting a claim on behalf of the estate.

*Connolly*, 802 F.3d at 817. The court continued:

> As this case demonstrates, however, the U.S. trustee is not a fail-proof safeguard, and in certain circumstances, a Chapter 7 creditor may be compelled to utilize its own resources to protect the estate as a whole. It is worth noting that, had the U.S. trustee fulfilled its duty as the "bankruptcy watch-dog" here, there is no question that the estate would have paid the expenses associated with removing the former trustee and prosecuting the malpractice action. See 11 U.S.C. §§ 326, 330. Thus, the construction [of § 503(b)] favored by the bankruptcy court, the U.S. trustee, and the dissent results in the disallowance of an administrative expense that would have been allowed had the bankruptcy proceeded as intended by the Bankruptcy Code.

*Id.* In short, the court concluded that the importance of the U.S. Trustee to Chapter 7 bankruptcies may well have been why Congress did not see fit to mention them in § 503(b)(3)(D), but it does not mean that when that "safeguard" fails, the Bankruptcy Court should be disempowered from compensating creditors who step in and serve the U.S. Trustee's purpose.[3]

---

[3] The *Connolly* court also rejected an argument based on the canon of "*expressio unius et exclusio alterius* ('the expression of one thing excludes others')" and the principle that "the specific governs the general." *Id.* at 818-19. To whatever extent these weighed in favor of a contrary interpretation of § 503(b)(3)(D), the court explained, they were outweighed by another canonical proposition: that statutes should be construed so as to avoid making any component of them superfluous, which the court determined would result from the disallowing the administrative expense under § 503(b)(3)(D). *See Connolly*, 802 F.3d at 818 (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

Third, the court articulated policy justifications for its reading of §
503(b)(3)(D) that are consistent with this conception of the U.S. Trustee and with
the purposes behind the Bankruptcy Code generally. "Failing to award
administrative expenses to the rare Chapter 7 creditors who are forced by
circumstances to tak[e] action that benefits the [bankruptcy] estate when no other
party is willing or able to do so, would deter them from participating in bankruptcy
cases and proceedings, which is plainly inconsistent with the purposes of the Act."
*Connolly*, 802 F.3d at 818 (quotation marked omitted) (alterations in original). This,
the court explained, would also serve to "impugn the fundamental notion of
bankruptcy as equitable relief." *Id.* at 819.

### 2. *Connolly* and Chapter 13 cases

*Connolly* stands for the proposition that the word "including" in the first
clause of 11 U.S.C. § 503(b) confers discretion on a bankruptcy court to award
administrative expenses on a case-by-case basis, and that the express mention of
Chapter 9 and Chapter 11 in § 503(b)(3)(D) does not negate that fact.

Debtor/Appellants argue that the Bankruptcy Court erroneously extended
*Connolly* to the case at bar because *Connolly* was a Chapter 7 case and this is a
Chapter 13 case. In making this argument, Debtor/Appellants appear to interpret
*Connolly* as merely establishing that § 503(b)(3)(D) reimbursements are permissible
in Chapter 7 cases, and to take the position that *Connolly* cannot be applied to

Chapter 13 cases in any circumstances. But this reading of *Connolly* is unduly focused on the outcome of the case while neglecting the reasoning behind it.

The Sixth Circuit held in *Connolly* that the word "including" in § 503(b) renders the list that follows it non-exhaustive, that this isn't negated by the express mention of Chapter 9 and Chapter 11 in § 503(b)(3)(D), and that bankruptcy courts therefore have the discretion to award § 503(b)(3)(D) administrative expenses in the rare non-Chapter 9 or Chapter 11 cases that call for it. The court elaborated that "reimbursement of administrative expenses properly follows from the totality of the pertinent facts, interpretation of the statutory language, and relevant equitable considerations." *Connolly*, 802 F.3d at 818. Nothing about the statutory interpretation in *Connolly* is unique to the Chapter 7 context. Whether *Connolly* can be applied to a Chapter 13 case, then, depends on the other two considerations identified by the Sixth Circuit: the totality of the pertinent facts, and the relevant equitable considerations. In other words, the propriety of extending *Connolly* to a given case does not depend on whether it is a Chapter 13 case—it depends on whether it is the right Chapter 13 case.

### 3. *Connolly* and the case at bar

Further guidance on when § 503(b)(3)(D) administrative expenses can be awarded in cases outside of the Chapter 9 or Chapter 11 contexts can be drawn from the closing discussion of the *Connolly* opinion. Noting the consistency of its holding

with the general purposes of the Bankruptcy Code, the *Connolly* court stated:

> Failing to award administrative expenses to the rare Chapter 7 creditors who are forced by circumstances to take action that benefits the bankruptcy estate when no other party is willing or able to do so would deter them from participating in bankruptcy cases and proceedings, which is plainly inconsistent with the purposes of the Act. This militates in favor of interpreting § 503(b) to embrace reimbursement of administrative expenses in cases such as this one and § 503(b)(3)(D) as not divesting the bankruptcy courts of the authority to do so.

*Connolly*, 802 F.3d at 818 (quotation marks and alterations omitted).

This Court concludes that in successfully objecting to the exemptions that Debtor/Appellants claimed in the annuities, Creditor/Appellee was "forced by circumstances to take action that benefit[ted] the bankruptcy estate when no other party [was] willing or able to do so," *id.*, and thus deserved reimbursement through an administrative expense under *Connolly*'s interpretation of 11 U.S.C. § 503(b).

To begin with, there is no question that Creditor/Appellee's actions substantially benefited the bankruptcy estate. As the Bankruptcy Court recognized, the disallowance of the exemptions that Creditor/Appellee achieved "brought a total value of $96,675.00 into the bankruptcy estate . . . for the benefit of all the creditors," and permitted all creditors to collect a 100% dividend on their allowed claims. (Designated Bankruptcy Record at 11-13, Pg ID 23-25.)

Moreover, as in *Connolly*, Creditor/Appellee took action benefiting the estate "when no other party [was] willing or able to" bring about the same result. *Connolly*,

802 F.3d at 818. Central to the reasoning behind the *Connolly* decision, and equally important here, is the fact that the creditor seeking reimbursement had stepped in because another party that was meant to act as a safeguard for the bankruptcy estate was unable or unwilling to do so: the U.S. Trustee in *Connolly*, and the Chapter 13 Trustee in this case.[4] In the Sixth Circuit's view, the circumstances in *Connolly* demonstrated that "the U.S. trustee is not a fail-proof safeguard, and in certain circumstances, a Chapter 7 creditor may be compelled to utilize its own resources to protect the estate as a whole." *Connolly*, 802 F.3d at 817.

The same is true here. The Chapter 13 Trustee did not object to Debtor/Appellants' claimed exemptions in the annuities at any point, and in fact filed a concurrence with the Bankruptcy Court regarding the final (and ultimately successful) objections that Creditor/Appellee made to the exemptions claimed by Debtor/Appellants. The Chapter 13 Trustee also did not object to Creditor/Appellee's seeking reimbursement after those objections proved successful; this is similar to *Connolly*, in which the Sixth Circuit noted that while the U.S. Trustee had objected to the creditors' motion for administrative expenses,

---

[4] The record before this Court does not indicate any active participation by a U.S. Trustee in the bankruptcy proceedings relevant to this appeal. Likewise, in *Connolly*, the administrative expense at issue was awarded for the creditors' participating in the removal of the grossly negligent Chapter 7 trustee, and so that bankruptcy trustee in *Connolly*—*i.e.*, the counterpart of the Chapter 13 Trustee in this case—could not have been expected to provide meaningful oversight. Thus, both cases had only one "watchdog": the U.S. Trustee in *Connolly* and the Chapter 13 Trustee in this case.

it only did so because it believed that such expenses were legally foreclosed by the "chapter 9 or 11" language in 11 U.S.C. § 503(b)(3)(D), which meant that but for that language, the "reimbursement would have been authorized without objection." *Connolly*, 802 F.3d at 817 n.6. Finally, there is no reason to conclude that the Chapter 13 Trustee would have taken any action if Creditor/Appellee had not made the objection—or even necessarily filed the concurrence without prompting, as the record reflects that the Chapter 13 Trustee filed the concurrence at Creditor/Appellee's suggestion.

Debtor/Appellants' argument on this point is that unlike the grossly negligent bankruptcy trustee in *Connolly*, the Chapter 13 Trustee in this case was perfectly competent to raise the objections without assistance from a creditor. In response, Creditor/Appellee argues that the Chapter 13 Trustee recognized that Creditor/Appellee was itself in the best position to pursue the objections. There is no clear evidentiary support for this claim in the record, but it is at least a plausible inference: Creditor/Appellee had raised a similar objection to Debtor/Appellants' attempt to exempt the annuities when it was counsel for the Chapter 7 Trustee before the case was converted, and the Chapter 13 Trustee might well have concluded based on Creditor/Appellee's familiarity with the issues that Creditor/Appellee was best situated to pursue the issue.

Whatever the reason behind the Chapter 13 Trustee's failure to object to the

Debtor/Appellants' attempts to exempt the annuities, the record strongly indicates that Creditor/Appellee took actions that resulted in significant benefits to the estate, and that it took those actions "when no other party [was] willing or able to do so." *Connolly*, 802 F.3d at 818. As the instant case presents the sort of extraordinary circumstances contemplated by the Sixth Circuit in *Connolly*, this Court concludes that the Bankruptcy Court did not err in applying *Connolly* to this case.

### C.    *Lamie v. United States Trustee*

Debtor/Appellants make a separate argument based on *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004), in which the Supreme Court held that to obtain compensation under 11 U.S.C. § 330, a Chapter 7 debtor's attorney must be "employed by the trustee and approved by the [bankruptcy] court." *Id.* at 535. Debtor/Appellants argue since Creditor/Appellee was not employed in this way when it made the objections for which it later sought reimbursement under 11 U.S.C. § 503(b)(3)(D), the Bankruptcy Court erred in awarding that reimbursement to Creditor/Appellee.

*Lamie* is irrelevant to this case. In *Lamie*, the Supreme Court held that "[11 U.S.C.] § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by [11 U.S.C.] § 327." *Lamie*, 540 U.S. at 539. 11 U.S.C. § 327, in turn, provides that the bankruptcy trustee, "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent

an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

Simply put, *Lamie* established employment under 11 U.S.C. § 327 as a prerequisite to receiving compensation under 11 U.S.C. § 330. But the Bankruptcy Court's award of administrative expenses in this case was based on 11 U.S.C. § 503(b)(3)(D)— a different statutory provision entirely. Debtor/Appellants have cited no authority establishing that *Lamie*—or any case concerning 11 U.S.C. §§ 327 and 330—has anything to do with § 503(b)(3)(D). In fact, the text and structure of § 503(b) more broadly weighs against such an interpretation: just as § 503(b)(3)(D) provides for substantial contribution administrative expenses like those at issue in this case, a different subsection of § 503(b) refers to the type of reimbursement that *Lamie* was concerned with, providing for administrative expenses for "compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2). If § 503(b)(2) encompassed the same type of administrative expenses that § 503(b)(3)(D) provides for, then § 503(b)(3)(D) would be rendered superfluous, and the Sixth Circuit cautions against interpreting the Bankruptcy Code in such a way. *See Connolly*, 802 F.3d at 818 ("[W]henever possible, a statute should be construed so that 'no clause, sentence, or word shall be superfluous, void, or insignificant . . . '.") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Accordingly, the Court rejects Debtor/Appellants' argument that the Bankruptcy Court's award of administrative expenses was foreclosed under *Lamie*.

## IV. CONCLUSION

This Court is bound by *Connolly*, and by its own reasoning, *Connolly* controls the case at bar. For this reason and for the other reasons stated above, this Court concludes that the Bankruptcy Court did not err in applying *Connolly* to this case. The Court therefore AFFIRMS the Bankruptcy Court's Order Regarding Motion to Allow Administrative Expense Filed by Stevenson & Bullock, PLC. (*In re Sharkey*, Bankr. Case No. 16-44445, ECF No. 194; Designated Bankruptcy Record at 153-54, Pg ID 165-66.)

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: November 15, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 15, 2017.

s/D. Tofil
Deborah Tofil, Case Manager